IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

CHARLES ESKER POSEY, III,          )
                                   )    4:12-cv-00431-JEG-RAW
          Plaintiff,               )
                                   )    REPORT AND RECOMMENDATION
vs.                                )    ON DEFENDANTS' MOTION
                                   )    FOR SUMMARY JUDGMENT
NEWTON CORRECTIONAL FACILITY,      )
KRISTINE WEITZELL,[1] TERRY        )
MAPES, JILL DURSKY, KATHERINE      )
KERR, LARRY LIPSCOMB, TERESA       )
SPARKS, JUSTIN RINGLER,            )
RICHARD BLYTHE, THOMAS PECORA,     )
TRENT COOK, JANICE BERRY, and      )
KAY KLEINSCHRODT,                  )
                                   )
          Defendants.              )

　　　　Plaintiff Charles Esker Posey, III, was an inmate at the

Newton Correctional Facility ("NCF") in Newton, Iowa. He has

brought a lawsuit against NCF, its warden Terry Mapes, numerous

officers and employees at NCF, and an Iowa Department of

Corrections ("IDOC") official. Through the summary judgment process

the claims in Mr. Posey's Second Amended Complaint[2] have been

narrowed to alleged violations of his rights under the Free

Exercise Clause of the First Amendment actionable under 42 U.S.C.

---

[1] Ms. Weitzell's name is spelled Weitzel in the Second Amended Complaint [22] and the Court docket; however, in the summary judgment appendix she signs as Weitzell. The Court adopts the spelling in the appendix.

[2] Mr. Posey requested and received court-appointed *pro bono* counsel, Mr. John E. Lande, who filed a Second Amended Complaint [19] to clarify the claims and the parties. The Court appreciates Mr. Lande's willingness to represent Mr. Posey. The care and high quality of the work he has devoted to his client are evident in the record.

§ 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, to exercise his Muslim religious beliefs, primarily while he was in protective custody from July 24, 2012 to August 9, 2012 during the month of Ramadan. Mr. Posey seeks damages and prospective injunctive relief. Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343(a)(3), and (4). This matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Defendants have filed the present summary judgment motion [30] on numerous procedural and substantive grounds. Plaintiff has resisted. In his resistance plaintiff dismisses his claims against defendants Janice Berry and Kay Kleinschrodt, and claims against the other defendants except those based on the alleged denial of opportunities to exercise his religious beliefs. For reasons which follow, the dispositive issue is plaintiff's failure to exhaust administrative remedies prior to bringing suit as required by 42 U.S.C. § 1997e(a).

## I.

### SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment only if, after viewing the evidence in the light most favorable to the nonmoving party and affording the nonmovant all reasonable inferences, *see Coker v. Arkansas State Police*, 734 F.3d 838, 841 (8th Cir. 2013); *Burton v. St. Louis Bd. of Police Com'rs*, 731 F.3d 784, 791 (8th

2

Cir. 2013), the depositions, answers to interrogatories, admissions, affidavits, or other materials presented to the court, show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Foster v. Missouri Dept. of Health and Sr.* Services, 736 F.3d 759, 762 (8th Cir. 2013); Preston *v. City of Pleasant Hill*, 642 F.3d 646, 651 (8th Cir. 2011); Fed. R. Civ. P. 56(a), (c)(1)(A).

The moving party must first inform the court of the basis for the motion and identify the portions of the summary judgment record which the movant contends demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)(citing *Celotex*, 477 U.S. at 323; *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 742-43 (8th Cir. 2009); *Robinson v. White County, Ark.,* 459 F.3d 900, 902 (8th Cir. 2006)). The nonmoving party must then "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999); *see Torgerson*, 643 F.3d at 1042; *Glorvigen*, 581 F.3d at 743; *In re Patch*, 526 F.3d 1176, 1180 (8th Cir. 2008); *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007); *Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006).

3

## II.   FACTUAL BACKGROUND

Mr. Posey was committed to the custody and care of the IDOC on May 4, 1998. He has a tentative discharge date of May 4, 2018. From May 10, 2012 until December 4, 2012 he was incarcerated at NCF. Mr. Posey practices the Sunni Muslim religion.

Defendant Kris Weitzell is an Assistant Deputy Director for the IDOC. Defendant Terry Mapes is the Warden at NCF. Defendant Jill Dursky is the Deputy Warden at NCF. Defendant Larry Lipscomb is the Treatment Manager at NCF. Defendant Teresa Sparks is a Unit Manager of Living Units A and B (respectively "LUA" and "LUB") at NCF in which Mr. Posey was housed. Defendants Richard Blythe, Thomas Pecora and Trent Cook are correctional officers at NCF. Defendant Katherine Kerr is the Grievance Officer at NCF. Defendant Justin Ringler is a Captain at NCF.

The IDOC has a policy regarding inmate grievances, "Offender Grievance Procedures," Policy No. IO-OR-06 (Def. App. [30-3] at 251). Prior to submitting a written grievance on the correct form, an inmate must attempt informal resolution with "their counselor, Unit Manager, Unit Supervisor or other supervisor." (*Id.* at 253). Written grievances must be filed within 30 days of "alleged incidents." (*Id.* at 252). "Within seven days of receipt, the Grievance Officer" numbers the grievance, determines the process to be used and provides a receipt to the inmate. (*Id.* at 254). Subject to extension on written notice to the inmate, a

4

written response from the Grievance Officer is to be provided within 21 days after receipt of the grievance. (*Id.* at 255). After receiving the Grievance Officer's response, an inmate has 15 days to file an appeal with the Warden/Superintendent of the facility. (*Id.* at 256). The Warden "or designee" must respond to the appeal within 15 days of receipt. (*Id.*) An appeal of the Warden's decision to the "respective Regional Deputy Director" of the IDOC must be received within 15 days of the Warden's or designee's response. (*Id.*) The Regional Deputy Director's response -- referred to as the "Central Office" response -- "is the final appeal step." (*Id.* at 255, 263)

Imam Taha Tawil of the Islamic Council of Iowa is an IDOC consultant. On June 15, 2012 Imam Tawil circulated a memorandum to prison officials concerning the celebration of Ramadan in 2012 with guidelines participating Muslim inmates were expected to follow. Imam Tawil advised that Ramadan started on July 20, 2012 and ended on August 18, 2012. (Def. App. [30-3] at 3-5). Mr. Posey was listed as a Ramadan participant in a memorandum to prison staff from NCF part-time Chaplain Larry Walker. (*Id.* at 102-103).

NCF records indicate that on July 24, 2012, Mr. Posey told prison staff he was afraid of his cellmate and asked to be placed in protective custody. (Def. App. [30-3] at 104). The same day Mr. Posey was removed from LUB to LUA, a locked unit, and placed in protective custody, a form of administrative segregation.

(*Id.* at 104, 131). Mr. Posey denies he requested placement in protective custody, though he also states he does not remember what happened between July 24, 2012 through July 29, 2012 because of the effects of an increase in his antidepressant medication. (Pl. Decl. [33-2] at 2-3). On August 5, 2012 Mr. Posey was moved out of LUA and back into LUB although he remained in administrative segregation status based on his protective custody request. (Def. App. [30-3] at 132). Inmates in segregated status are not allowed to attend Ramadan daily communal prayer services, but instead are limited to Ramadan observances on their own in their cells. (*Id.* at 133, 136, 140-142).

According to Mr. Posey, by July 29, 2012 the effects of the change in his antidepressant medication had worn off and he realized he was in protective custody. (Pl. Decl. [33-2] at 3). Mr. Posey complains his observance of Ramadan was restricted while he was in protective custody in the following ways: he was not allowed out of his cell to shower before sunrise, was not allowed to attend communal prayer with other Muslims, did not have access to his prayer rug, Quran or head covering; and was not given food before sunrise or after sunset. (*Id.* at 3-4). Mr. Posey alleges that between July 24 and August 9, 2012 he sent "kites" and grievances about these restrictions to his Unit Manager, defendant Teresa Sparks, but never received confirmation they had been received or reviewed. (*Id.* at 4). He says he observed a corrections officer

"take the kites and grievances that I wrote to Defendant Sparks and slide them under Defendant Sparks' door." (*Id.*)[3]

Prison records reflect that on August 9, 2012, during a classification meeting Mr. Posey told prison staff he was "hurting because he hasn't eaten for 5 days due to Ramadon [sic]," did not remember "checking into PC" and asked to be taken out of protective custody. (Def. App. [30-3] at 106). Mr. Posey signed a Protective Custody Refusal Form on August 9 and was moved to a nonsegregated cell in LUB. (*Id.* at 148). Unit Manager Sparks has not been able to find the protective custody request form Mr. Posey should have signed before he was placed in voluntary protective custody. (Sparks Aff. [43] at 8).

During the approximately seven months Mr. Posey was at NCF Grievance Officer Katherine Kerr processed sixteen grievances submitted by him. (Def. App. [30-3] at 150). Mr. Posey did not pursue most of these all the way through the grievance process to

---

[3] A "kite" is a written communication from an inmate to a prison staff member on a form provided for the purpose. Typically a kite is used by an inmate to ask a question and the staff member responds. (*See, e.g.*, Def. App. [30-3] at 244). A kite is not a grievance nor is it a necessary part of the grievance process, though it is one means by which an inmate can attempt the informal resolution required by the grievance policy.

In her affidavit Ms. Sparks states that she received only two kites from Mr. Posey as attached to the affidavit, and none in July or August 2012. (Sparks Aff. [43] at 4).

With respect to grievances, Ms. Sparks states the Grievance Officer would have been sent any and all grievances Ms. Sparks would have received from Mr. Posey while housed in LUA or LUB. (Sparks Aff. [43] at 4).

appeal to the Central Office. (*Id.*) He did pursue four grievances through final appeal to the Central Office. He asserts three of these pertain to the restrictions on his ability to exercise his Muslim religion on which the present lawsuit is based, grievance numbers 13870, 13964, and 14164.

Mr. Posey submitted grievance number 13870 on August 13, 2012. In it he complained that he was having an ongoing problem being let out of his cell for his daily pre-dawn Ramadan shower at the 3:30 a.m. time designated in a staff memo. (Def. App. [30-3] at 163). Grievance Officer Katherine Kerr denied the grievance, telling Mr. Posey there would be occasions when he might not be let out to shower right at 3:30. (*Id.* at 166). Mr. Posey appealed, stating he had seen officers in "the bubble" but the last time he had not been let out for a shower until 4:00 a.m. His appeal was denied by Deputy Warden Dursky. (*Id.* at 167-68). Mr. Posey appealed to the Central Office on September 13, 2012. The appeal was received on September 20, 2012. In the appeal Mr. Posey said he had to pound on the cell door fifteen to thirty minutes each morning to be let out. He also complained generally about the attitude of correctional officers to Muslim inmates. (*Id.* at 170). The Central Office appeal was denied by Assistant Deputy Director Weitzell on October 8, 2012. (*Id.* at 171).

8

Mr. Posey submitted grievance number 13964 on August 22, 2012. In it he complained he had "put in several kites and grievances in the past few weeks in regards my treatment over Ramadan" but had only received one acknowledgment. He asked for acknowledgment of the kites and grievances. (Def. App. [30-3] at 192). Grievance Officer Kerr "partially sustained" the grievance, telling Mr. Posey:

> Since 06/25/12, my office has received six grievances from you. One was non-grievable and was returned to you. The other five have been answered and sent to you. If you feel that you have filed more grievances then [sic] that, you will need to check with your Unit Manager on their status. I have no way of tracking any kites that you may have filed. If you feel that you have sent kites and not received a response, you have the option of resubmitting your kites.

(*Id.* at 193). Mr. Posey appealed this response stating he had been told "she does not answer kites" (the Court infers the reference is to Unit Manager Sparks) and pointing out that kites were an important record to show the courts he had attempted informal resolution. (*Id.* at 194). The appeal was denied by Deputy Warden Dursky. (*Id.* at 195). Mr. Posey then appealed to the Central Office on September 13, 2012. The appeal was received on September 20, 2012. In the appeal Mr. Posey complained about unanswered kites submitted to Unit Manager Sparks and repeated he needed evidence of receipt to show compliance with the informal resolution requirement. (*Id.* at 197). In neither his appeal to the Warden nor

9

to the Central Office did Mr. Posey again refer to unacknowledged grievances. The Central Office appeal was denied by Assistant Deputy Director Weitzell on October 16, 2012. Ms. Weitzell informed Mr. Posey she talked to Unit Manager Sparks and was told Ms. Sparks did not throw kites away but "chooses to talk with an offender about his issue instead of returning an answered kite. On grievances she makes note of the informal resolution before it goes to the Grievance Officer." (*Id.* at 198).

Mr. Posey submitted grievance number 14164 on September 10, 2012. (Def. App. [30-3] at 208-09). In it he complained he had been taken to the hospital that day where he was told by a nurse he had Type II diabetes, a diagnosis of which he had not previously been informed. Ms. Kerr partially sustained the grievance, noting an NCF physician had documented the diabetes on September 4, and that the physician had ordered blood sugar monitoring on September 17. (*Id.* at 211). Mr. Posey appealed alleging the NCF physician never said anything to him about documenting diabetes and in fact had told him the lab work showed he had no blood sugar deficiency. (*Id.* at 212). Deputy Warden Dursky partially sustained the grievance, giving her opinion that prison medical staff had "a good handle on your medical condition." (*Id.* at 213). Mr. Posey appealed to the Central Office on October 19, 2012. The appeal was received October 24, 2012. In that appeal he for the first time tied his medical condition to going without food for seventeen days during

10

Ramadan. (*Id*. at 215). He asked to be sent to the University of Iowa hospitals for evaluation. (*Id*.) The Central Office appeal was denied by Ms. Weitzell on November 2, 2012. (*Id*. at 216).

Mr. Posey signed his *pro se* Complaint on September 4, 2012 and sent it to the Court. The Complaint [1] was filed and this lawsuit commenced on September 14, 2012.

## III.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires state prisoners to first take their complaints about prison conditions to prison administrators when prisoners are afforded a procedure to do so.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion required is "proper" exhaustion which means "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *King v. Iowa Dept. of Corr.*, 598 F.3d 1051, 1053 (8th Cir.), *cert. denied*, 131 S. Ct. 499 (2010)(quoting *Woodford v. Ngo*,

548 U.S. 81, 88 (2006)); *see Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). Courts thus must look at the state of the record at the time a lawsuit is filed, not at the time a decision in the case is rendered. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). If exhaustion was not completed at the time of filing, dismissal is mandatory. *Id*. Failure to exhaust is an affirmative defense. *Bock*, 549 U.S. at 212, 217, 219.

In submitting his grievances Mr. Posey was pursuing an administrative remedy available to him under the IDOC grievance policy. *See King*, 598 F.3d at 1052 (citing IDOC grievance policy); *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002). Defendants pleaded failure to exhaust administrative remedies in their Amended Answer [21]. They seek summary judgment on the defense. In their brief on the issue defendants argued that in none of the three grievances appealed to the Central Office and discussed above did Mr. Posey make any of the complaints on which he now sues.

The IDOC grievance policy does not specify any particular grievance content requirements. The uniform grievance form merely instructs the inmate to give a "Description of Problem." (Def. App. [30-3] at 258). A central purpose of the PLRA is to alert prison officials to a problem and give them a pre-suit opportunity to address it. *See Woodford*, 548 U.S. at 93. An inmate's description of the problem and the relief requested should be minimally sufficient to serve this purpose. Except perhaps with respect to

the late showers grievance, defendants raise a legitimate issue about the sufficiency of the three grievances. However, the issue need not be resolved in this ruling because a more obvious exhaustion deficiency is apparent. Mr. Posey did not complete the grievance process before filing suit.

This lawsuit was filed on September 14, 2012. Mr. Posey sent his Central Office appeals of grievance numbers 13870 and 13964 the day before, on September 13, 2012. They were received by the Central Office on September 20, 2012. The last grievance, number 14164, was not sent to the Central Office until October 19, 2012. The Central Office did not determine any of the appeals until, in order, October 8, 2012; October 16, 2012; and November 2, 2012. The Central Office appeals had not been received or decided at the time of suit. Consequently, with respect to none of the grievances had Mr. Posey completed the administrative review process laid out in the IDOC policy prior to bringing suit in this Court.

As the parties had not addressed premature suit exhaustion in their briefs, the Court by order entered February 27, 2014 [46] gave the parties an opportunity to do so. Defendants, predictably perhaps, agreed the administrative review process had not been completed. (Def. Supp. Brief [48]). Mr. Posey did not dispute the procedural background or that his premature commencement of this action would ordinarily prevent a finding that

13

any of the grievances had been exhausted for PLRA purposes. Instead he argues defendants waived premature suit as a basis for their exhaustion defense by failing to raise the issue in their summary judgment brief. (Pl. Supp. Brief [47] at 2).

There has been no waiver. The exhaustion defense remains in the case. A party is not required to bundle all possible theories or arguments in a summary judgment motion in order to preserve them for later determination just as a party is not required to file a motion for summary judgment at all. In fact, Fed. R. Civ. P. 56(f)(1) expressly permits a court to grant a motion for summary judgment "on grounds not raised by a party" so long as notice and a reasonable opportunity to respond is given. That is what has occurred here.

The Court certainly understands plaintiff's frustration with an interpretation of the PLRA exhaustion requirement which mandates dismissal of a lawsuit for failure to exhaust administrative remedies when the remedies were exhausted, just not completely so before suit was filed. The case law, however, is quite clear on the subject. It is best to end the lawsuit now rather than to forge ahead. In the circumstances of this case any attempt to avoid the exhaustion rule by resort to principles of waiver cannot succeed, just as the attempt to excuse exhaustion was unavailing in *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001). The same ultimate result would obtain with the same waste of "a significant amount of time and energy." *Id.*

14

Alternatively, Mr. Posey argues that for PLRA purposes he had no available remedy with respect to his complaints about his treatment during Ramadan because Unit Manager Sparks did not respond to the grievances he submitted while in protective custody. The Eighth Circuit has "'held that inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies.'" *Hammett*, 681 F.3d at 948 (quoting *Lyon*, 305 F.3d at 808).

At the outset it seems implausible that Mr. Posey was prevented by Ms. Sparks or other prison officials from using the grievance process. As noted, during the time he was at NCF Grievance Officer Kerr processed sixteen grievances submitted by Mr. Posey. This, coupled with Mr. Posey's concern that his kites be answered in order to demonstrate compliance with the informal resolution requirement, evinces both regularity on the part of prison officials in responding to his grievances, and a level of knowledge and sophistication on Mr. Posey's part about the process. Also, a number of Mr. Posey's grievances reflect that he engaged in the informal resolution process with Ms. Sparks through face to face contact, grievances Ms. Sparks must have forwarded to Grievance Officer Kerr. (Def. App. [30-3] at 182, 190, 192, 231, and 243). For summary judgment purposes, however, the Court must take as true the statement by Mr. Posey in his declaration that while in protective custody he sent grievances to Ms. Sparks

regarding his treatment during Ramadan which she did not acknowledge and which went unanswered by prison officials. (Pl. Decl. [33-2] at 4).

Even so, it is clear from the summary judgment record that Mr. Posey was not prevented from exhausting the grievance process about problems observing Ramadan while in protective custody because he submitted two grievances on the subject which were processed by prison officials in the usual course.

Mr. Posey submitted grievance number 13913 on August 17, 2012. He described the problem somewhat inconsistently as follows:

> All month of Ramadan there has been no problem attending Islamic Functions until today when they say they were told Ramadan is finished so I have no reason to attend my Islamic functions. There has been ongoing problems from LUB staff throughout the month on all Islamic Issues. Either it's a hate for me, a hate for blacks or a hate for Islam.

(Def. App. [30-3] at 174). The action requested by Mr. Posey was for an end to problems concerning Islamic functions. He gave as examples missing prayer time, missing "Juma,"[4] late morning showers, and "not allowed to Ramadan in AdSeg . . . ." (*Id.*) Grievance Officer Kerr responded primarily with respect to prison staff's version of an incident in which Mr. Posey said he had not been able to attend Juma, concluding by telling him he would need

---

[4] Juma, or Jumu'ah, is a "weekly Muslim congregational service" held on Friday. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345 (1987).

to follow proper procedures when staff explains procedures to him. (*Id.* at 175). Mr. Posey appealed primarily on the Juma issue. His appeal was denied by Deputy Warden Dursky who said she thought all staff were "on the same page" on the subject of religious services and functions. She added it was more difficult "when you . . . go into and out of the segregation unit," but said the prison would work hard to ensure all religious functions are met. (*Id.* at 178). Mr. Posey wrote up an appeal of the deputy warden's decision but did not send it to the Central Office. (Pl. Resp. to Def. Stmt. of Facts [33-1] ¶ 17; Def. App. [30-3] at 150).

On the same day he submitted grievance Number 13913, Mr. Posey submitted a second grievance, number 13914. In describing the problem he wrote:

> I have been seeking answers on who decides who can take part in Ramadan and who cannot. I have not been able to find a NCF policy or IDOC policy. Nor has any official been able to show me or give me any information.

(Def. App. [30-3] at 182). The action Mr. Posey requested was "to be shown policy on why I was not able to do Ramadan in ADSeg in LUA or LUB when it was decided on by this admin. to take me off and replace me back on the Ramadan list." (*Id.* at 182). Grievance Officer Kerr denied the grievance explaining:

> Offenders in GP level three and higher may attend services outside the unit. Offenders who are in levels 2 and lower are permitted to worship in their cells. These offenders may request religious materials from the chaplain. If you wish to take part in worship services,

> you will need to conduct yourself in a pro
> social way and follow the policies, procedures
> and rules of the institution to ensure that
> you remain in GP status so that you can go to
> the functions.

(*Id.* at 184). Mr. Posey appealed stating he had a First Amendment right to participate in Ramadan and asking that a uniform Ramadan procedure policy be adopted by IDOC. (*Id.* at 185). Deputy Warden Dursky denied the appeal with essentially the same information about inmate attendance at worship services provided by Grievance Officer Kerr. (*Id.* at 186). Again, Mr. Posey wrote up an appeal of the deputy warden's decision but did not send it to the Central Office. (Pl. Resp. to Def. Stmt. of Facts [33-1] ¶ 18; Def. App. [30-3] at 150).

In grievance numbers 13913 and 13914 Mr. Posey more directly and comprehensively raised problems he experienced observing Ramadan in 2012 while in administrative segregation than in any of the three grievances appealed to the Central Office on which he relies for exhaustion. Number 13914 in particular focused on his claimed inability to observe Ramadan while in administrative segregation, as did the responses to the grievance. Though grievance numbers 13913 and 13914 did not, except with respect to communal prayers, detail the specific alleged restrictions which have been the subject of this lawsuit, they demonstrate Mr. Posey

was not prevented from using the IDOC grievance policy to complain about his treatment during Ramadan.[5]

On the undisputed facts in this record Mr. Posey did not exhaust his administrative remedies with respect to any of the three grievances upon which he relies because he filed this lawsuit prior to completion of the grievance appeal process. The fact that Mr. Posey did submit grievances about problems he experienced in observing Ramadan in 2012 which were responded to by prison officials demonstrates that Mr. Posey was not prevented by prison officials from pursuing relief through the grievance process. Defendants are therefore entitled to summary judgment because Mr. Posey failed to exhaust his available administrative remedies prior to filing his lawsuit as required by the PLRA. The Court agrees with plaintiff that the dismissal of his religion claims should be without prejudice. *See Walker*, 270 F.3d at 578.[6]

---

[5] The IDOC grievance policy states that one of the things the Grievance Officer is to do upon receipt of a grievance is to determine the process to be used. Where there is a policy or procedure in place which has formal appeal mechanisms, the problem described in a grievance is considered "[n]on-grievable," including "religious issues" encompassed by such a policy or procedure. (Def. App. [30-3] at 254). Grievance Numbers 13913 and 13914, as well as the other three grievances upon which Mr. Posey bases his exhaustion argument, were all processed by Grievance Officer Kerr as "[s]tandard" grievances. (Def. App. [30-3] at 162, 173, 181, 191, 207). None was rejected as non-grievable because it involved a religious issue covered by a policy or procedure with formal appeal mechanisms.

[6] Plaintiff asked for oral argument, but in view of the narrow issue on which the motion for summary judgment is decided and the
(continued...)

# IV.

## RECOMMENDATION AND ORDER

The undersigned RESPECTFULLY RECOMMENDS that defendants' motion for summary judgment [30] be **granted** on the ground of failure to exhaust administrative remedies and that plaintiff's First Amendment Free Exercise and RLUIPA claims be dismissed without prejudice. All other claims should be dismissed with prejudice.

IT IS ORDERED that the parties shall have until **April 21, 2014** to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of plaintiff's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999

---

[6](...continued)
parties' opportunity to address the issue, the Court does not believe argument would be useful.

F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at

357.

      IT IS SO ORDERED.

      Dated this 31st day of March, 2014.


                            _____
                         ROSS A. WALTERS
                         UNITED STATES MAGISTRATE JUDGE